**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL L. SPARKS, # K-98355,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-1044-NJR** |
| | ) | |
| **STEPHANIE DORETHY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In 2002, Petitioner Michael L. Sparks was convicted of the first-degree murder of his estranged wife, following a jury trial in Madison County, Illinois. He was sentenced to 35 years' imprisonment and is now in custody of the Illinois Department of Corrections at Hill Correctional Center.

On September 29, 2014, Sparks filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). His *pro se* Petition raised 12 grounds for relief, 7 of which were dismissed on preliminary review by the Court because Sparks had not exhausted his state court remedies before seeking federal habeas relief. (Doc. 6). After Respondent answered (Doc. 23), Sparks's retained counsel filed his Reply. (Doc. 36). On May 4, 2017, the Court considered the remaining claims (1-5), denied relief, and dismissed the case. (Doc. 46).

Sparks appealed, and on January 9, 2018, the Seventh Circuit vacated the dismissal order and remanded for this Court to dismiss Sparks's mixed petition so that he could make the choice whether to dismiss his unexhausted claims or seek a stay of the proceedings while he exhausted them. (Doc. 56-1). Sparks subsequently filed an Amended Petition (Doc. 58), which contains only his exhausted claims. The Amended Petition is now before the Court along with a Response filed by Respondent

Stephanie Dorethy.[1] (Doc. 70). Sparks was given an opportunity to reply to the Response, but he did not do so. (Docs. 71, 74, 79).

The Amended Petition (Doc. 58) lists five grounds for relief (claims 1-2 and 4-6 below). The Response discusses the *Brady* claim as a distinct issue (claim 3 below); the Court adopts that enumeration for convenience:

1. Sparks's Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial were violated when he was forced to wear an electronic stun belt during trial, without a hearing to determine manifest need for that security measure (Doc. 58, pp. 2-7);

2. Sparks's right to counsel, Fifth Amendment privilege against self-incrimination, and Fifth/Fourteenth Amendment right to due process were violated by the State's use of a jailhouse snitch (Tomerlin) to obtain an alleged confession from Sparks without his attorney being present (Doc. 58, pp. 7-12);

3. The state's failure to disclose Tomerlin's past plea bargains and record of testifying for the State in other cases amounted to a violation of *Brady v. Maryland* (Doc. 58, pp. 9-12, 20-21);

4. Sparks's Fifth and Fourteenth Amendment rights to due process and a fair trial were violated by the prosecutor's introduction of Tomerlin's "confession" testimony which he either knew to be false, or recklessly disregarded the likelihood it was false (Doc. 58, pp. 13-21);

5. Trial counsel's failure to investigate and interview witnesses to impeach Tomerlin's testimony on Sparks's alleged jailhouse confession violated Sparks's Sixth Amendment right to effective assistance of counsel (Doc. 58, pp. 21-24);

6. Sparks was deprived of the effective assistance of appellate counsel, who failed to raise the claim (# 5) of ineffectiveness of trial counsel in Sparks's direct appeal (Doc. 58, pp. 24-25).

(Doc. 58; Doc. 70, pp. 4-5). Claims 1-3 and 5-6 are identical to the exhausted claims reviewed by the Court in the dismissal order at Doc. 46.

Respondent asserts that claims 1-3, as well as portions of claims 5 and 6, are procedurally defaulted; claims 1 and 3 are barred by *Teague v. Lane*, 489 U.S. 288 (1989); and claims 4-6 are barred

---

[1] The Court previously denied Respondent's motion (Doc. 61) to dismiss the Amended Petition as successive and untimely. (Doc. 65).

from re-litigation by 28 U.S.C. § 2254(d). (Doc. 70, pp. 5-11). Further, Respondent specifically preserves the arguments that the Amended Petition (Doc. 58) is successive and untimely. (Doc. 70, p. 1 n.1). The Court rejected Respondent's successive and untimely arguments in denying her motion to dismiss (Docs. 61, 65), but recognizes the preservation of these points.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### 1.    State Trial Proceedings

This summary of the facts is derived from the detailed description by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Sparks's conviction on direct appeal and affirming the denial of his postconviction petition. *People v. Sparks*, No. 5-03-0297 (Apr. 11, 2006); *People v. Sparks*, No. 5-13-0059 (October 24, 2013); (Docs. 23-1; 23-3/Exhibits A and C).[2] The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Sparks has not done. 28 U.S.C. § 2254(e).

Sparks's wife, Patricia (Pat), filed for divorce in 2000. In the days leading up to September 2, 2000, Sparks and Pat were dividing up their personal property after having sold their marital home. Pat had moved out of the house and was living with her mother. On the morning of September 2, 2000, Pat went to the house to retrieve some things. Sparks had breakfast with a neighbor and also went to the house. Pat's mother called the house at about 11:00 a.m., but there was no answer. (Doc. 23-1, pp. 3-4).

At about 11:00 a.m. on September 2, 2000, a Madison County sheriff's deputy was dispatched to the scene of an abandoned pickup truck. He found a man walking in circles in a nearby soybean field. That man turned out to be Sparks. Sparks did not respond when the deputy spoke to him. The deputy called the dispatcher and requested a license plate check. The truck was registered to Michael

---

[2] Citations in this Order are to the document, exhibit, and page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system. Unless otherwise specified, all exhibits referred to are attached to the original Response, Doc. 23.

Sparks. The dispatcher called the Sparks residence, but there was no answer. The deputy realized that Sparks was carrying a .38-caliber handgun. Sparks dropped the gun when ordered to do so. The gun contained one spent round and four live rounds of ammunition. Upon searching Sparks, the deputy found a pocketknife and divorce papers in his pocket. There was a bag of savings bonds in the truck. (Doc. 23-1, pp. 1-2).

Another deputy went to the Sparks marital home and found the body of a woman, later identified as Patricia Sparks, lying on a bed. She had been shot once in the forehead from a distance of about two inches. She was alive when found but died shortly thereafter. (Doc. 23-1, p. 2).

A search of the home yielded a bullet casing from the bed where Pat was found. No tests were performed upon Sparks or Pat to detect gunpowder residue. The gun found with Sparks was not tested for fingerprints, and ballistics testing was unable to match the gun with the bullet retrieved from the crime scene. The trial court suppressed the introduction of many items seized in the search of the home and Pat's vehicle. (Doc. 23-1, pp. 2-3).

Sparks was arrested and charged with first-degree murder three days later. He was incarcerated while awaiting trial. A fellow jail inmate, Manuel Tomerlin, testified at trial that Sparks confessed to him that he intentionally shot his wife because he feared that Pat and her sister would take his money in the divorce. Tomerlin's own pending murder charges were later reduced to second-degree murder. (Doc. 23-1, pp. 2-3).

Sparks presented expert testimony that he suffered from posttraumatic stress disorder (PTSD) as a result of his service in Vietnam in 1967-68. Pat had previously filed for divorce in 1988, but the parties reconciled. The trial court allowed limited testimony regarding Sparks's alleged abuse of Pat during the marriage. (Doc. 23-1, p. 3). All but one of Sparks's statements made during his questioning at the jail soon after his arrest were suppressed by the trial court; the jury was allowed to hear that he admitted having been present in the marital home on the day of the shooting, and that he told police that "if he had shot Pat, then 'it would have been an accident.'" (Doc. 23-1, p. 9).

At the time of Sparks's trial, the Madison County sheriff's office required defendants charged with serious crimes such as murder to wear an electronic stun belt during trial. (Doc. 23-3, p. 7). The belt held two "packs"— each about the size of a deck of cards. Sparks was required to wear the belt under his clothes, *i.e.*, a T-shirt, shirt, and suit jacket. The belt was not deployed while Sparks was wearing it. (Doc. 23-3, p. 9). At a hearing on Sparks's postconviction petition, the parties stipulated that the trial judge would have testified that he was not aware at any time before or during the trial that Sparks was wearing a stun belt. They also stipulated that Sparks's trial counsel would have testified that he had no recollection of whether Sparks wore a stun belt during trial or as to whether Sparks complained to him about the stun belt. (Doc. 23-3, p. 11). Other facts will be discussed as necessary in the analysis below.

## 2. Direct Appeal

Petitioner raised a number of points on appeal:

1. The conviction should be reversed because of prosecutorial misconduct, consisting of improper opening statement, inflammatory remarks during trial, improper questions, unfair argument, improper closing argument, and attacking the integrity of defense counsel.

2. The evidence was insufficient to establish that Sparks was guilty beyond a reasonable doubt.

3. The trial court erred in denying Sparks's motion to suppress evidence.

4. The trial court erred in admitting evidence of Sparks's prior bad acts.

5. The trial court erred in limiting the testimony of Sparks's expert on posttraumatic stress disorder.

6. Sparks's right to be present for all proceedings was violated by ex parte communications between jurors, third parties, and the trial court.

7. The trial court erred in refusing to instruct the jury on involuntary manslaughter.

(Doc. 23-4).

After his conviction was affirmed, Sparks, through counsel, filed a Petition for Leave to Appeal

(PLA), which raised only the first, fourth, and sixth points. (Doc. 23-9). The Supreme Court denied the PLA. (Doc. 23-10).

**3.      Postconviction Petitions**

Sparks's postconviction petition was summarily dismissed. On appeal, however, the Appellate Court reversed, holding that Sparks was entitled to an evidentiary hearing. (Doc. 23-2). In August 2010, Sparks's counsel filed an amended postconviction petition raising the following points:

1. Sparks's constitutional rights were violated by forcing him to wear the stun belt during trial without a prior determination of an essential state interest to justify it.

2. Trial and appellate counsel were ineffective in failing to raise the stun belt issue.

3. The state presented false testimony of Tomerlin when it knew or should have known the testimony was false.

4. Trial and appellate counsel were ineffective in failing to present the issue of Tomerlin's false testimony.

5. Communications by third parties to the jurors violated Sparks's rights.

6. The state failed to fully disclose information about its favorable treatment of witness Tomerlin in return for Tomerlin's testimony in past cases.

7. Sparks's Sixth Amendment right to counsel was violated by the State's use of Tomerlin to obtain incriminating statements from Sparks outside the presence of his attorney.

8. Trial counsel was ineffective in failing to investigate and call witnesses to impeach Tomerlin's testimony about Sparks's jailhouse confession, and appellate counsel was ineffective in failing to raise trial counsel's failure.

9. Trial counsel was ineffective in failing to demand a pretrial hearing to determine whether use of the stun belt was warranted, and in failing to pursue an insanity defense based on Sparks's posttraumatic stress disorder.

(Doc. 23-15).

The trial court held an evidentiary hearing and denied the amended postconviction petition. (Doc. 23-37). Sparks, represented by counsel, raised the following points on appeal:

1. Forcing Sparks to wear the stun belt during trial caused a fundamental and serious constitutional error such that a new trial was compelled under the plain error doctrine.

2. Dismissal of the claim that the state knew or should have known that Tomerlin's testimony was false was erroneous, and Sparks was entitled to a hearing on that claim.

3. Dismissal of the ineffective assistance of counsel claims was against the manifest weight of the evidence.

(Doc. 23-16).

The Appellate Court affirmed the denial of the petition. (Doc. 23-3). Sparks filed a *pro se* PLA, raising the following points:

1. The Supreme Court should grant leave to appeal to resolve a conflict between the Third and Fifth Appellate Districts regarding whether failure to raise the issue of being forced to wear a stun belt during trial constitutes a waiver of the issue.

2. Sparks's Sixth Amendment right to counsel and Fourteenth Amendment right to due process were violated by forcing him to wear a stun belt during his trial.

3. Sparks was entitled to an evidentiary hearing on whether the state knew or should have known that Tomerlin's testimony was false.

4. Sparks was entitled to an evidentiary hearing on his ineffective assistance of counsel claims.

(Doc. 23-21). The Supreme Court denied the PLA on March 26, 2014. (Doc. 23-22).

In March 2014, Sparks filed a motion for leave to file a successive postconviction petition. He alleged, in part, that he had newly discovered evidence that Manuel Tomerlin had a history of testifying for the state in return for favorable plea deals, and that the state's failure to disclose that information violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 23-39, pp. 3-17). In July 2014, the state court appointed the public defender to represent Sparks and ordered the state to respond to the motion. (Doc. 23-43, p. 45). The motion was pending at the time Sparks filed this federal habeas action in September 2014.

In January 2015, the state court held a hearing on the motion for leave to file a successive postconviction petition. (Doc. 23-34). Sparks testified that he became aware of Tomerlin's history of

trading favorable testimony for plea deals in December 2013. (Doc. 23-34, p. 9). The state court denied

the motion, and Sparks filed a notice of appeal. (Doc. 23-43, pp. 63-64).

LAW APPLICABLE TO SECTION 2254 PETITION

**1. Substantive Law**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death

Penalty Act (AEDPA). "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. Under 28 U.S.C. § 2254(d), habeas

relief is restricted to cases where the state court determination "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States" or "a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the

governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir.

2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable

application of" clearly established federal law if the state court "identifies the correct governing legal

rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal

justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*,

562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,

concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is

intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v.*

8

*Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). (internal citations omitted).

## 2. Timeliness, Exhaustion, and Procedural Default

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, habeas petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id*. Failure to do so results in procedural default.

Respondent does not claim that Sparks failed to exhaust his state court remedies for the claims

in the Amended Petition. (Doc. 70). She did not argue that the original Petition was untimely filed, but preserves the argument that the Amended Petition is successive and untimely. (Doc. 70, p. 1 n.1). Respondent asserts that several claims raised by Sparks are procedurally defaulted.

**Claim 1 – Electronic Stun Belt**

Sparks notes that he was unaware of the sheriff's policy requiring him to wear the stun belt until the first day of his trial. His attorney was not present when Deputy Collman told him that he must wear it or the case would be tried in his absence. The Deputy informed Sparks that the belt was capable of shocking him with up to 50,000 volts of electricity for five seconds and that he would activate it if Sparks "did not comply with the instructions of the officer, made any outburst or quick movement, made any perceived hostile movement, tampered in any way with the belt, or failed to comply with the commands of the officer." (Doc. 23-3, p. 3). Sparks had previously appeared in court (never wearing a stun belt) many times without any incident or inappropriate conduct, and there was no court order requiring this security measure. Sparks alleges that his ability to focus on the trial proceedings and to effectively communicate with his counsel was impaired because he feared the stun belt could be deployed. The stun belt was the primary reason for his decision not to testify. (Doc. 58, pp. 2-3; Doc. 23-3, pp. 3-4, 9-11).

This Court's task on habeas review is to determine whether the state court's decision on the issue at hand was contrary to or an unreasonable application of federal law, or amounted to an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). The court must assess the decision of the last state court to rule on the merits of the claim raised in the habeas petition. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). On this matter, that is the decision of the Illinois Appellate Court affirming the denial of Sparks's postconviction petition. (Doc. 23-3).

The appellate court affirmed the trial court's conclusion that Sparks had waived the stun belt

issue because he never raised it during or after the trial despite having the opportunity to do so. (Doc. 23-3, pp. 14-15). Further, assuming the issue had not been waived, the appellate court held that Sparks failed to show he suffered a substantial deprivation of his constitutional rights by being required to wear the stun belt. Discussing *People v. Boose*, 362 N.E.2d 303, 305-06 (Ill. 1977) (outlining factors a court must consider when deciding whether to allow physical restraints on a defendant in a jury proceeding), and *People v. Allen*, 856 N.E.2d 349, 353 (Ill. 2006) (under *Boose* factors, electronic stun belt use "is warranted only where there has been a showing of manifest need for the restraint), the court noted there was no evidence in the postconviction hearing to show that jurors could have seen the belt under Sparks's several layers of clothing, thus the use of the stun belt did not affect the jury. (Doc. 23-3, pp. 15-17). The trial court did not err by failing to inquire into the need for the stun belt, because neither the court nor defense counsel was aware Sparks was wearing it. (Doc. 23-3, pp. 17-18).

Sparks leads off his argument with the key case on the constitutionality of shackling a defendant in court, *Deck v. Missouri*, 544 U.S. 622 (2005).[3] He relies on an earlier Supreme Court decision, *Illinois v. Allen*, 397 U.S. 337, 344 (1970), as well as federal appellate court opinions to argue that the effect of physical restraints on the defendant is equally important as the assessment of their effect on the jury, when determining whether the device is constitutional. (Doc. 58, pp. 4-7).

Respondent maintains that the stun belt claim is procedurally defaulted, as the state appellate court found – Sparks's failure to raise the issue at his first available opportunity waived the issue. (Doc. 70, p. 5). Further, the waiver rule amounts to an independent and adequate state law ground for dismissal of the claim. *Id.* Aside from the procedural default, Respondent argues that Sparks's stun belt claim seeks to establish a new rule that invisible restraints violate the Constitution, when such a rule is not dictated by existing precedent. (Doc. 70, pp. 7-8).

Respondent is correct that "[w]hen a state court resolves a federal claim by relying on a state

---

[3] *Deck* held that visible shackles in the presence of the jury would violate a defendant's constitutional rights.

law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)). The Illinois waiver rule applied here by the appellate court has been recognized time and again as an independent and adequate state ground. *See Richardson*, 745 F.3d at 271-72; *Kaczmarek*; *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Sparks sets forth no argument to overcome the finding of waiver.

Even if the issue had not been waived, Sparks still fails to show that the state court's rejection of his stun belt claim amounted to an unreasonable application of clearly established Supreme Court precedent. *Deck v. Missouri*, 544 U.S. 622 (2005), held that a court "cannot routinely place defendants in shackles or other physical restraints *visible to the jury* during the penalty phase of a capital proceeding." *Deck*, 544 U.S. at 633 (emphasis added). Sparks seeks to extend this rule to circumstances where the restraints are not visible to the jury. No matter how compelling such an argument may be, the Supreme Court has not adopted that principle. Even though federal courts of appeal and Illinois state courts may have extended the reasoning of *Deck* to hidden shackles, federal habeas relief cannot rest on such lower court holdings. Only a decision contrary to "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), will lead to habeas relief, and Sparks cannot point to such an established rule here.

The same is true for Sparks's argument that the effect of shackles on the defendant is an equal factor in determining the constitutionality of physical restraints. *Illinois v. Allen*, 397 U.S. 337, 344 (1970), does not set forth such a rule. And finally, it cannot be said that the state court's factual finding that the stun belt was not visible to the jury was an unreasonable determination of the facts in light of the evidence presented. (Doc. 23-3, pp. 16-17). In sum, Sparks has not demonstrated a basis for habeas corpus relief on the stun belt claim.

**Claim 2 –       State's Use of Tomerlin to Obtain Confession as Violation of Rights to Counsel, Due Process, and Privilege Against Self-Incrimination**

Sparks argues that fellow jail inmate Tomerlin's testimony relating Sparks's alleged confession to the murder of his wife was "the key to the State's case" because the rest of the evidence against him was largely circumstantial. In exchange for his testimony, Tomerlin's pending first-degree murder charge was reduced to second-degree, eliminating a possible life sentence. Sparks concludes that Tomerlin was acting as "an agent for the State" when he elicited Sparks's purported confession. As such, this "secret interrogation" by Tomerlin violated Sparks's right to counsel. (Doc. 58, pp. 7-10). Sparks argues that the procedural default doctrine should not preclude review of this claim because he presented it for state court review in his postconviction petition. Further, he had cause for failing to raise the matter on direct appeal because he did not learn about the State's Attorney's deal with Tomerlin to attempt to get a confession from Sparks until after his direct appeal was filed. He was prejudiced by the late disclosure of the deal because he was deprived of the opportunity to seek suppression of Tomerlin's testimony at the time of trial. (Doc. 58, pp. 10-12).

Respondent again argues that this claim is procedurally defaulted and waived, because Sparks did not bring it up in his direct appeal or raise it before the state appellate court or supreme court in the appeal of his postconviction case. (Doc. 70, pp. 5-6).

The claim that Tomerlin's questioning violated Sparks's right to counsel is indeed procedurally defaulted because of Sparks's failure to raise it for one full round of state court review. Sparks raised the claim in his counseled First Amended Postconviction Petition. (Doc. 23-15, p. 31). After the trial court denied postconviction relief, however, Sparks did not raise this claim on appeal or in the PLA, thus it did not receive the required full round of state court review. (Doc. 23-16, pp. 47-51, raising the issue that the State presented perjured testimony (Tomerlin's); Doc. 23-21, pp. 14-17, same); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 841-45 (1999).

A procedurally defaulted claim may only be reviewed by a federal habeas court if the petitioner

can demonstrate actual innocence, or cause for the failure to raise the claim earlier, as well as actual prejudice resulting from the alleged violation. *See Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Gladney v. Pollard*, 799 F.3d 889 (7th Cir. 2015). Here, Sparks asserts he can show cause and prejudice. Cause must be shown by pointing to some circumstance not attributable to the petitioner that prevented him or her from complying with the state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Sparks asserts that he has cause for not raising the claim on the uncounseled interrogation by Tomerlin during direct review because he did not learn about Tomerlin's agreement to attempt to extract a confession on the State's behalf until after he brought his appeal. (Doc. 58, pp. 11-12). Even if the Court accepts this explanation, it does not address Sparks's failure to present the issue for review in the appeal and PLA following the denial of his postconviction petition, and he sets forth no reason at all to excuse that omission. Because he fails to establish cause for that default, his assertion of prejudice is insufficient to allow for federal review of the defaulted claim. Finally, Sparks does not articulate any claim of actual innocence that might overcome his procedural default. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013); (Doc. 58, pp. 7-12).

Claim 2, alleging that Tomerlin functioned as an agent of the State while seeking to extract a confession from Sparks, thus violating his rights to counsel, due process, and to avoid self-incrimination, fails because Sparks did not bring the claim through one full round of state court review.

**Claim 3 – State's Failure to Disclose Tomerlin's Past Pleas as *Brady* Violation[4]**

Woven into Sparks's argument in Claim 2 of the Amended Petition is his assertion that the State was obligated under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose to the defense the information that the prosecution had offered a deal to Tomerlin on his own pending case if he could elicit a confession from Sparks. (Doc. 58, pp. 9, 11-12). Such information would have been favorable to the defense and would have provided grounds to impeach Tomerlin or possibly seek suppression of

---

[4] Sparks included this argument under Claim 2; it is addressed and numbered separately here as Claim 3.

his testimony. Sparks previously argued in this habeas action that the State violated *Brady* by failing to disclose Tomerlin's past record of testifying for the prosecution against other inmates in exchange for lenient treatment in his own criminal cases. (Doc. 36, pp. 55-56).

Respondent argues this ground is waived, procedurally defaulted, and is (like Claim 1) barred by *Teague v. Lane*, 489 U.S. 288 (1989). (Doc. 70, pp. 5-8).

The record shows that Sparks did not raise his *Brady* claim on direct appeal, but he did briefly raise it in his postconviction petition as part of his argument that the prosecution knowingly presented false testimony from Tomerlin and referenced it in his ineffective-assistance claim. (Doc. 23-15, pp. 27, 35). But he failed to mention the *Brady* claim at all in either his postconviction appeal or PLA. (Doc. 23-16, pp. 47-50; Doc. 23-21, pp. 14-19). Unsurprisingly then, the appellate court did not address the *Brady* issue when it discussed the claims relating to Tomerlin's testimony. (Doc. 23-3, pp. 18-20). As with Claim 2 above, Sparks's failure to raise the *Brady* claim for one full round of state court review means that it is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 841-45 (1999). And for the same reasons discussed under Claim 2, Sparks has not established cause and prejudice to overcome the default.

Because habeas review of the *Brady* claim is precluded by the procedural default rule, the Court need not discuss Respondent's argument that it would fail on the merits. (Doc. 70, pp. 7-8).

**Claim 4 – State's Knowing Use of Perjured Testimony[5]**

Sparks raised this claim in both his original and amended postconviction petitions, and submitted supporting affidavits of four fellow inmates in the Madison County Jail at the time Sparks and Tomerlin were held there: Jeramey Brown, Ralph Hanner, Kevin Umfleet, and William Owen. (Doc. 23-15, pp. 24-27; Doc. 23-11, pp. 23-24, 26-27, 31-33). According to these inmates, Tomerlin admitted he planned to lie in Sparks's case in order to get less prison time and stated Sparks had never

---

[5] This claim was numbered as Claim 3 in Sparks's Amended Petition. (Doc. 58, p. 13).

discussed his case with him (Tomerlin). Only Brown's affidavit (the most detailed) was discussed by the appellate court in concluding that Sparks did not make a showing of the falsity of Tomerlin's testimony sufficient to warrant an evidentiary hearing. (Doc. 23-3, pp. 18-20).

Sparks argues in his Amended Petition that Tomerlin's well-known history of exchanging testimony against other defendants for substantially lower sentences in his own criminal cases over many years, his statements to Brown and the other jail inmates, and his false or misleading statements in Sparks's trial regarding the deal he had cut in his then-pending murder case, were enough to demonstrate that he fabricated the story of Sparks's jailhouse confession. (Doc. 58, pp. 13-21). These circumstances further showed, Sparks claims, that the prosecutor either knew Tomerlin's confession testimony was false, or recklessly disregarded the likelihood that Tomerlin lied.

Respondent argues that this claim is barred from relitigation by 28 U.S.C. § 2254(d), and the state court reasonably determined that it failed for lack of evidence. (Doc. 70, pp. 8-11).

Longstanding Supreme Court precedent holds that a prosecutor's knowing use of false testimony to obtain a conviction is a violation of the defendant's due process rights. *Pyle v. Kansas*, 317 U.S. 213 (1942). In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court extended the rule to cover a failure of the prosecution to correct testimony which it did not solicit, but which it knows to be false. To make a successful claim for the knowing use of false testimony, a habeas petitioner must establish that "(1) there was false testimony; (2) the prosecution knew or should have known it was false; and (3) there is a likelihood that the false testimony affected the judgment of the jury." *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011).

In his affidavit,[6] Jeramey Brown stated that between April 23, 2001, and December 5, 2001, other inmates in the Madison County Jail told him to stay clear of Tomerlin because Tomerlin "was the type of character who will claim I discussed my case with him and in the interim claim I confessed

_____

[6] Brown's affidavit was signed and notarized on July 6, 2007. (Doc. 23-11, p. 33).

to him [in] exchange for some sort of deal." (Doc. 23-11, p. 31). These inmates also told Brown that Sparks was "about to be a victim" of Tomerlin. *Id.* Brown then confronted Tomerlin in front of the other inmates, but Tomerlin "claimed it wasn't true." *Id.* Tomerlin stated that Sparks had not discussed his case with him and that any information he had on Sparks came from the newspaper. Brown also asserted that Tomerlin said that he had told his lawyer, the State's Attorney, and a detective that Sparks had not discussed his case with him, but the State's Attorney did not care where the information came from. Tomerlin told Brown that the State's Attorney offered to drop Tomerlin's pending first-degree murder charge to a lesser offense, but Tomerlin declined. (Doc. 23-11, pp. 31-32). Inmates Hanner and Owen claimed that Tomerlin told them he would lie about Sparks's alleged confession, but the appellate court held that neither affidavit was valid as the documents were not sworn before a notary public or anyone with authority to administer oaths. (Doc. 23-3, p. 21; Doc. 23-11, pp. 23, 26-27).

The appellate court found no error in the trial court's dismissal of the false testimony claim without holding an evidentiary hearing. The court reasoned that Brown's affidavit did not establish that Tomerlin's testimony was false, and thus Sparks had not made a substantial showing of a constitutional violation. (Doc. 23-3, pp. 18-20). Tomerlin's reputation among his fellow jail inmates as a person who was likely to lie in order to get a reduced sentence, according to the court, "does not support an inference that Tomerlin perjured himself with the prosecutor's knowledge." (Doc. 23-3, p. 19). Referencing Brown's statement that he and other inmates confronted Tomerlin about the rumors that Tomerlin had cut a deal with the State's Attorney to testify against Sparks, the court observed, "It was not likely that Brown would be truthful under these circumstances." (Doc. 23-3, pp. 19-20). In the context of the court's discussion, the court clearly meant to say that it was not likely that *Tomerlin* (not Brown) would be truthful under the circumstances of being confronted by his fellow prisoners. The court further noted that according to Tomerlin's testimony, he spoke many times with his own attorney about Sparks's jailhouse confession before his lawyer spoke with the prosecutor, and he obtained his information directly from Sparks. (Doc. 23-3, p. 20).

The Illinois Appellate Court did not reference *Napue v. Illinois*, 360 U.S. 264, 269 (1959), or *Pyle v. Kansas*, 317 U.S. 213 (1942), in its ruling. Nonetheless, when the court concluded that Sparks failed to make a sufficient showing that Tomerlin's testimony was false or that the prosecutor knew it was untrue, it essentially ruled that Sparks failed to meet the first two of the three *Napue* requirements for establishing this claim. *See Morales*, 659 F.3d at 606. A state court is not required to cite or even be aware of Supreme Court cases, so long as its reasoning and result do not contradict controlling Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). The appellate court concluded that the trial court did not err in finding that Brown's affidavit was insufficient to warrant a hearing on the claim that Tomerlin testified falsely at trial. Under the applicable standards for habeas review, this Court cannot say that the state court's analysis was contrary to or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts in light of the evidence before the court. 28 U.S.C. § 2254(d). Even taking Brown's affidavit as true, his account did not establish that Tomerlin was telling the truth to Brown when he denied that he had made a deal with the prosecutor and said that if he testified against Sparks it "would be a lie" because he had not talked to Sparks. (Doc. 23-11, p. 32). As the appellate court observed, it is unlikely that Tomerlin would admit to a group of fellow jail inmates that he planned to testify falsely that Sparks had confessed to him. (Doc. 23-3, pp. 19-20).

Sparks urges that because Tomerlin was not truthful on the stand about the sentence he was likely to get as a result of his deal with the State, and the prosecution "bolstered" this testimony, Sparks is entitled to habeas relief. (Doc. 58, pp. 17-20). Tomerlin said he was likely to receive a 20-year prison term in his pending murder case, when in fact his deal resulted in Tomerlin serving no additional sentence beyond the time he had already served. (Doc. 58, p. 17). Sparks included this argument in his Amended Postconviction Petition (Doc. 23-15, pp. 25-27), but only discussed the point in a cursory fashion in his appellate brief. (Doc. 23-16, pp. 47, 51). The appellate court did not discuss this aspect of the perjured testimony claim other than to note that on direct appeal it had found that the State's

offer of a deal to Tomerlin in exchange for his testimony did not constitute prosecutorial misconduct. (Doc. 23-3, p. 19).

This argument does not bear directly on the substance of Tomerlin's testimony regarding Sparks's confession. Instead, it goes to Tomerlin's credibility in the eyes of the jury. The jury knew that Tomerlin had been promised a benefit for testifying against Sparks, but Sparks seeks habeas relief because he claims the jury was misled as to how good the deal was, and the prosecutor failed to correct Tomerlin's obfuscation. In light of the appellate court's reasonable determination that Tomerlin's confession evidence was not proven to be false, Sparks's attack on this issue of Tomerlin's credibility is not sufficient to support habeas relief. Further, the authority he cites is not convincing. (Doc. 58, pp. 17-20). *Fields v. City of Chicago*, No. 10-C-1168, 2015 WL 13578989 at *10 (N.D. Ill. Apr. 7, 2015), was a civil case where the plaintiff (who had been acquitted in his criminal case) obtained a new civil trial against Chicago police officers who allegedly violated his due process rights, because a key adverse witness in the first civil trial misrepresented his plea deal. The result in *Fields* has no bearing on whether a habeas petitioner may be entitled to relief from a criminal conviction. The other case on which Sparks relies, *Maxwell v. Roe*, 628 F.3d 486, 500-08 (9th Cir. 2010), found a prosecutor's failure to correct material false testimony improper only after the court first concluded that the jailhouse informant's account of a confession had been false. Here, where Sparks failed to convince the trial court or appellate court that Tomerlin lied about his confession, his claim relating to Tomerlin's truthfulness about his own plea deal falls short of meeting the *Napue* factors.

To summarize, Sparks does not set forth any argument or authority to convince this Court that the appellate court's rejection of his claim that the State knowingly presented perjured testimony was contrary to or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

**Claim 5 – Ineffective Assistance of Trial Counsel[7]**

Sparks focuses on his trial attorney's alleged failure to conduct any investigation of potential witnesses named by Sparks (Brown, Umfleet, and Owen) who might have undermined the credibility of Tomerlin's testimony on Sparks's alleged confession to murder. (Doc. 58, pp. 21-24). Counsel did not call at trial any of the fellow jail inmates whose later affidavits indicated Tomerlin would lie about the confession. Sparks briefly suggests his lawyer was also ineffective for failing to make a *Brady* request for information on any deal Tomerlin may have made with the State in exchange for his testimony, and whether Tomerlin was acting as an agent of the State in eliciting a confession from Sparks. (Doc. 58, pp. 22-23). He acknowledges, however, that the record is not clear whether trial counsel made such a request. *Id.* Sparks argues that he was prejudiced by the lack of testimony regarding Tomerlin's "reputation as a serial snitch" and Tomerlin's specific statements to other inmates about his plans to testify falsely. (Doc 58, p. 23).

Respondent argues that the state court considered and rejected this claim, which precludes Sparks from relitigating it on habeas review. (Doc. 70, pp. 10-11). She further asserts that Sparks procedurally defaulted his claim of ineffectiveness for failing to call Brown because his relevant PLA took issue only with the failure to call Umfleet and Owen, without mentioning Brown. (Doc. 70, pp. 6-7; Doc. 23-21, pp. 17-19).

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Analysis under *Strickland* and on habeas review under Section 2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Further, because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Ibid.*

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must

---

[7] This claim was numbered as Claim 4 in Sparks's Amended Petition. (Doc. 58, p. 21).

demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 687-88. A petitioner must satisfy *both* prongs of the *Strickland* analysis to be eligible for habeas relief. There is no mandatory order for the analysis, however, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id*. at 697.

Under *Strickland's* performance prong, a court looks into "the objective reasonableness of counsel's performance." *Harrington*, 562 U.S. at 110. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* There is a strong presumption of adequate assistance, and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 107-08. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

This Court's task is to determine whether the state court's decision was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). The relevant state court decision is the decision of the last state court to consider the issues raised in the habeas petition. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). On this issue, that is the decision of the Illinois Appellate Court affirming the denial of Sparks's Amended Postconviction Petition. (Doc. 23-3, pp. 20-22). In rejecting

Sparks's ineffective assistance claim, the appellate court cited to an Illinois Supreme Court case, *People v. Johnson*, 183 Ill.2d 176 (1998), which in turn cited *Strickland*, and correctly recited the *Strickland* two-pronged test, noting that *Strickland* requires a showing of both deficient performance by counsel and resulting prejudice. (Doc. 23-3, p. 20).

The appellate court found that the affidavits of Hanner and Owen could not be considered because they were not notarized or otherwise sworn before a person authorized to administer oaths, and were therefore invalid under the requirements of the Illinois Postconviction Hearing Act. (Doc. 23-3, p. 21). The Illinois affidavit rule is an independent and adequate state ground, which precludes the habeas court from considering them unless Sparks demonstrates cause and prejudice or a fundamental miscarriage of justice. *See Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). Sparks has not attempted to make such a showing.

That leaves only the affidavits of Umfleet and Brown. The state court ruled that neither affidavit demonstrated that trial counsel rendered ineffective assistance. (Doc. 23-3, p. 21). Umfleet's affidavit said Tomerlin had stated "he would do anything it takes to get out of here;" he had heard about Sparks's case from other inmates; and he had talked with a detective and the prosecutor who were going to "drop his charge down." (Doc. 23-3, p. 21; Doc. 23-11, p. 24). Rejecting the claim of ineffective assistance of trial counsel, the appellate court observed that nothing in Umfleet's affidavit indicated that Tomerlin's testimony was false, nor did it prove that Tomerlin did not have a direct conversation with Sparks about Sparks's case. (Doc. 23-3, p. 21). Thus, the lack of this testimony did not prejudice Sparks.

In reaching its conclusion on the ineffective assistance claims, the appellate court stated:

> In its order, the trial court determined that the record was clear that defense counsel had investigated the statements of inmates at the county jail and was award of their proffered testimony, but had decided not to put them on the stand . . . . then concluded that trial counsel's decision was a matter of trial strategy.

(Doc. 23-3, p. 21). This summary of the trial court's record belies Sparks's claim in this federal habeas

action that "trial counsel did not conduct *any* investigation of the available witnesses." (Doc. 58, p. 22) (emphasis added).

As to Brown's affidavit, the appellate court noted that Sparks only learned about Brown's interactions with Tomerlin after Sparks's direct appeal was concluded.[8] Brown's affidavit, therefore, did not support the notion that trial counsel should have known prior to trial about the conversations to which Brown might have testified, "especially when [Sparks] was not even aware of Brown's knowledge until 'long after' the direct appeal was decided." (Doc. 23-3, p. 21). Accordingly, the court found Sparks did not establish an ineffective assistance claim against his trial counsel based on testimony that Brown might have given. Sparks's argument to this Court that his lawyer improperly failed to look into potential witnesses whose names Sparks provided cannot be applied to Brown, because Sparks acknowledged that he did not know about Brown's potential testimony at the time of trial – and counsel cannot be ineffective for failing to investigate a witness that counsel did not know about. Sparks thus fails to show defective performance by trial counsel, and he does not demonstrate any error on the part of the state court in rejecting his ineffective assistance claim for counsel's failure to investigate Brown as a witness.

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The question for this Court is not whether it believes that trial counsel was ineffective. Rather, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court in *Harrington* emphasized that the unreasonable application standard is a difficult one to meet, by design. Section 2254, as amended by AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further."

---

[8] Sparks said in his Amended Postconviction Petition that he obtained Brown's affidavit on July 6, 2007, thus the matters raised in it could not have been considered on direct appeal. (Doc. 23-15, pp. 24-25).

*Harrington*, 562 U.S. at 102.

The Seventh Circuit instructs that "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014), citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Sparks has not met this standard; no clear error is apparent here. To the contrary, the appellate court's conclusion that trial counsel was not ineffective was well within the boundaries of permissible differences of opinion among fairminded jurists. *See McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017); *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

**Claim 6 – Ineffective Assistance of Appellate Counsel**[9]

On appeal from the denial of Sparks's postconviction petition, the state court rejected his claim of ineffective assistance of appellate counsel. It found that because trial counsel's failure to call Umfleet as a witness lacked merit, Sparks was not prejudiced by his appellate counsel's failure to raise the issue on direct appeal. (Doc. 23-3, p. 21). The allegation of ineffective assistance by appellate counsel for failing to raise the matter of Brown's potential trial testimony also failed, because Brown's affidavit was not part of the trial record. (Doc. 23-3, pp. 21-22).

Sparks suggests that trial counsel admitted his own ineffectiveness and failure to investigate, when he commented on the record that "Tomerlin gave perjured testimony and that could have been ferreted out before he ever hit the stand." (Doc. 58, p. 24) (quoting from Doc. 23-32, p. 11). The appellate court considered this statement as it rejected Sparks's ineffective assistance claim against his trial attorney. (Doc. 23-3, p. 20). Notably, trial counsel's declaration was made in the context of the hearing on the defense's motion for new trial, where counsel argued that the trial court erred in denying Sparks a pretrial hearing on the issue of Tomerlin's credibility. (Doc. 23-32, pp. 2, 9-11). There was no claim at that time that trial counsel had been ineffective or failed to conduct reasonable

---

[9] This claim was numbered as Claim 5 in Sparks's Amended Petition. (Doc. 58, p. 24).

investigations, and counsel was not being asked to explain his defense strategy. This brief statement does not support a trial-level ineffectiveness claim that appellate counsel should have raised on appeal.

As discussed under Claim 5 above, Sparks failed to demonstrate any error in the appellate court's denial of his ineffective trial counsel claim. Accordingly, he cannot demonstrate that he was prejudiced by his appellate counsel's failure to raise on appeal a nonmeritorious claim of trial counsel's ineffectiveness. *See Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014). Claim 6 also fails as a ground for habeas corpus relief.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court denies a certificate of appealability. Sparks may reapply for a certificate of appealability to the United States Court of Appeals, Seventh Circuit. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).

CONCLUSION

For the reasons set forth above, Michael L. Sparks's Amended Petition for Habeas Relief Pursuant to 28 U.S.C. § 2254 (Doc. 58) is **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Sparks wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Sparks plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Sparks does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED:  March 26, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**